IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTOINE YOUNG, | * | |
|     Plaintiff, | | |
| v. | * | CIVIL ACTION NO. DKC-14-1493 |
| DEPARTMENT OF PUBLIC SAFETY | * | |
| & CORRECTIONAL SERVICES, et al., | | |
|     Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

Pending is a Motion to Dismiss, or in the Alternative Motion for Summary Judgment filed by Defendants Department of Public Safety and Correctional Services, Gary Maynard, J. Phillip Morgan, Steven A. Wilson, John Sandstrom, and J. Michael Stouffer. ECF No. 11.[1] Plaintiff has responded. ECF No. 13. Upon review of the papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the dispositive motion will be granted.

### Background

Plaintiff Antoine Young alleges that in August of 2011, while confined at the Western Correctional Institution ("WCI"), Case Manager Helmick denied him access to his lawyer by refusing to schedule a telephone conference and released personal information to his lawyer without Plaintiff's consent. ECF No. 1, p. 3; ECF No.1-1.[2] In attachments to the Complaint, it appears that Mr. Helmick advised Plaintiff's attorney of the basis for Plaintiff's assignment to disciplinary segregation and declined the attorney's request to bring Plaintiff to case management

---

[1] In his Motion to Amend Complaint (ECF No. 14) Plaintiff clarifies that he intended to file his Complaint against Case Manager Helmick, J. Michael Stouffer, J. Phillip Morgan, Gary Maynard, and Scott Oakley. Plaintiff did not list these Defendants in the caption of his Complaint. Plaintiff's Motion, however, shall be granted. As such, Plaintiff's Complaint against John Sandstrom, S. A. Wilson and D. Harrison Pratt shall be dismissed. The Clerk shall be directed to add Case Manager Helmick and Scott Oakley as Defendants. For the reasons that follow, even if Helmick and Oakley had been properly served with the Complaint, Plaintiff's claims against them would be subject to dismissal.

[2] References are to the court's electronic docket.

for a phone consultation.  The attorney reported that he was advised that Plaintiff had lost the right to use the telephone due to his placement on disciplinary segregation.  ECF Nos. 1-10, 1-11.  Plaintiff indicates he complained to J. Michael Stouffer and Philip Morgan, but apparently his complaints were denied, and he appealed the warden's decision to the Inmate Grievance Office (IGO).  ECF No. 1, p. 3.  Plaintiff's complaint was dismissed by the IGO for failure to state a claim.  *Id*., p. 3-4.  Plaintiff also indicates he wrote to Secretary Gary Maynard regarding these issues but does not indicate what, if any, response he received.  *Id*.  Plaintiff complains that the disclosure of information regarding his disciplinary segregation sentence was in violation of Division of Correction policy and was not authorized by him.  ECF No. 1-12.

Defendants indicate that the Department of Public Safety and Correctional Services (DPSCS) promulgated Division of Correction Directive (DCD) 200-002 provides that an inmate may utilize the automated inmate telephone system (AITS) to place telephone calls.  ECF No. 11-3.  Additionally, an inmate may receive permission to use a correctional facility's non-AITS telephone for an emergency call, to contact his or her attorney when an established legal deadline cannot be met unless immediate telephone contact is allowed, or under extraordinary circumstances as determined by the inmate's case manager.  *Id*., at 06(H).  Inmates who are assigned to disciplinary segregation have the same procedures as general population inmates for using the telephone for legal matters.  ECF No. 11-4 (WCI 110.006.1.05(A)(16), providing that segregation inmates must make request for access to the attorney of record in writing to the Housing Unit Manager, Case Manager or Chaplain for approval).

Additionally, WCI's inmate handbook delineates institutional rules, including those for telephone use.  ECF No. 11-5.  WCI's inmate handbook notes inmates may use an institutional

2

phone to make emergency telephone calls. *Id*. Legal calls are not considered emergencies[3] and communication between inmates and their attorneys are to be handled through the mail, visitation, or by collect calls using the recreational hall telephone. *Id*.

Plaintiff's case manager, Stephen Helmick, denies telling Plaintiff's attorney that disciplinary segregation inmates cannot receive an attorney phone call. Helmick avers that he conducts all attorney inmate phone calls in accordance with relevant DCDs and the WCI inmate handbook. ECF No. 11-4. Inmates confined on disciplinary segregation may set up a pre-arranged date and time between the lawyer and case manager for a collect call to be made by the inmate for attorney client communication. *Id*. Additionally, while housed on disciplinary segregation, Plaintiff was allowed attorney visits and could communicate with his attorney through mail. ECF No. 11-8. After filing a grievance regarding Helmick's conversation with his attorney, Plaintiff was specifically reminded of the four means for communicating with his attorney i.e. mail, visitation, video conference, and collect telephone call. ECF No. 1-1.

Plaintiff was assigned to disciplinary segregation after having been found guilty, on April 18, 2011, of assault on an inmate and possession of a weapon. ECF No. 11-7. He was sentenced to 365 days of disciplinary segregation and his visitation was suspended for one year. *Id*., p. 7. On November 2, 2011, Plaintiff's conviction for assault on an inmate was upheld by an administrative law judge. ECF No. 11-9. Plaintiff's conviction for possession of a weapon was vacated and as a result the sanction of loss of visitation was vacated and a lesser sanction of 180 days loss of visitation imposed. Plaintiff's sanctions were affirmed in all other respects. *Id*.

WCI 20-0012, entitled "Access to Inmate Case Records," provides that an inmate may be asked to sign a release form in order that the institution may respond to both oral and written

---

[3] Under DCD 200-002.05(B)(5) an "emergency telephone call" is a call made by an inmate concerning serious family illness, injury or death to a family member, or other serious matters as determined by appropriate correctional facility personnel. ECF No. 11-3.

inquiries by family members, attorneys or other individuals. ECF No. 11-10, p. 2 (WCI 020.0012.05(C)). Only general case information may be disclosed without the inmate's consent. *Id*. In order for a third party to access an inmate's base file, a DCD 20-12 AR release form is required. ECF No. 11-8. Information concerning an inmate's disciplinary segregation status can be given to an attorney to explain how the attorney can contact his client even if no release form has been completed. *Id*.

## Standard of Review

A.   Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.   Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but

whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

A.   Eleventh Amendment

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Penhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. State Gov't Code Ann., § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus, Plaintiff's complaint against the Department of Public Safety and Correctional Services, a State agency, is barred by the Eleventh Amendment.

B.   Supervisory Liability

The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that

supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Plaintiff's claims as to Defendants Oakley, Stouffer, Morgan and Maynard focus solely on their actions taken in their supervisory roles in reviewing his grievances. Plaintiff has pointed to no action or inaction on the part of Oakley, Stouffer, Morgan or Maynard that resulted in a constitutional injury, and accordingly, his claims against them shall be dismissed.

C. Denial of Telephone Call with Attorney

In order for Plaintiff to prevail on his claim regarding the denial of counsel's request that Plaintiff be brought to the case manager's office for a telephone conference, he must establish that the use of this system of phone contact has somehow infringed on a constitutionally protected right and has caused him an injury. *See White v. White*, 886 F.2d 721, 723-24 (4th Cir. 1989) (holding that it was proper for district court to dismiss a prisoner's claim that contained no allegation of specific injury related to a delay in legal mail). To the extent that Plaintiff's claim that the denial of telephone contact with his attorney on one occasion implicated his right to

access the courts, his claim fails. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977) (Prisoners have a constitutionally protected right of access to the courts.).

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

A prisoner "has no right to unlimited telephone use." *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (quoting *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir.1989)); *see also United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000). Telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution." *Reno*, 25 F.3d at 1100 (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir.1986)); *see also Valdez v. Rosaenbaum*, 302 F.3d 1039 (9th Cir. 2002) (no violation where phone access cut off to prevent detainee from warning others of impending indictments); *Massey v. Wheeler*, 221 F.3d 1030, 1037 (7th Cir. 2000) (reasonable limitations on unmonitored calls with attorney); *Gilday v. DuBois*, 124 F.3d 277, 293 (1st Cir. 1997) (no constitutional right to phone access; therefore, access can be conditioned on consent to monitoring); *McMaster v. Pung*, 984 F.2d 948, 953 (8th Cir. 1993) (limits on phone access to inmates on segregation not a denial of access to counsel); *Arney v. Simmons*, 26 F. Supp. 2d 1288, 1293 (D. Kan. 1998).

Here, Plaintiff had ample other opportunities to contact counsel, including telephonically. That Helmick declined to fetch Plaintiff from his cell at counsel's request demonstrates no infringement of Plaintiff's rights. "Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing

contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), quoting *Lewis,* 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Absent a specific allegation of harm, Plaintiff has failed to state a claim of constitutional magnitude and this claim will be dismissed.

D.     Release of Information

Plaintiff's complaint regarding the release of information regarding his disciplinary segregation sentence is in essence a claim that his constitutional right to privacy has been violated. Prisoners ordinarily have no legitimate expectation of privacy. *Hudson v. Palmer*, 468 U.S. 517 (1984); *Turner v. Safley*, 482 U.S. 78 (1987); *Bell v. Wolfish*, 441 U.S. 520, 559-60 (1979). Here, Plaintiff's claim pertains to his interest in avoiding disclosure of personal information. *See Whalen v. Roe*, 429 U.S. 589, 599 – 600 (1977). Although it is not all together clear that Plaintiff actually has a federal constitutional right to privacy regarding his housing status,[4] it is plain from Plaintiff's complaint that he cannot establish an injury of constitutional significance. *See e.g.*, *Adams v. Drew*, 906 F. Supp. 1050, 1057 (E.D. Va. 1995) (disclosure that Plaintiff had HIV subjected him to beatings by other inmates). To state a constitutional claim a serious injury is required. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (serious injury required in order to state a failure to protect claim); *Strickler v. Waters,* 989 F.2d 1375, 1380-81 (4th Cir. 1993) (serious emotional or physical injury resulting from conditions required to state

---

[4] *See Watson v. Lowcountry Red Cross*, 974 F.2d 482, 487-88 & n. 9 (4th Cir.1992) (disclosure of private medical information may trigger constitutional protections). *See also Taylor v. Best*, 746 F.2d 220, 225 (4th Cir.1984) (upholding prison regulation requiring divulgence of family background by inmates).

Eighth Amendment claim); *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (medical treatment must be so inadequate that it shocks the conscience in order to state an Eighth Amendment claim); *Paul v. Davis*, 424 U.S. 693, 712 (1976) (damage to reputation through defamatory statements not sufficient to state constitutional claim)*; O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997)( actual injury required to state claim for denial of access to courts); *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (actual injury requirement derives from the doctrine of standing).  Plaintiff does not explain how he was injured by the disclosure of information to his lawyer regarding his housing status.[5]  As such, Plaintiff's claim fails.

## Conclusion

Plaintiff's claims against John Sandstrom, S. A. Wilson and D. Harrison Pratt, Stephen Helmick and Scott Oakley are dismissed.  The dispositive motion filed on behalf of Department of Public Safety and Correctional Services, Gary Maynard, J. Phillip Morgan, and J. Michael Stouffer is granted.  A separate Order follow.

Date:  June 24, 2015              _____/s/_____
                                  DEBORAH K. CHASANOW
                                  United States District Judge

---

[5] To the extent Plaintiff claims Defendants did not follow their own policies regarding disclosure of personal information, his claim fails.  Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met.  *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).